```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
 2
               HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4
      UNITED STATES OF AMERICA,        )
 5                                     )
                      PLAINTIFF,       )   CASE NO. 07CR02898-LAB
 6                                     )
               VS.                     )
 7                                     )   SAN DIEGO, CALIFORNIA
      JORGE DANIEL RAMIREZ-ARMAS,      )   MARCH 24, 2008
 8    VERONICA QUINTERO-NAVARRO,       )   9:30 A.M.
                                       )
 9                    DEFENDANTS.      )
      _____)
10

11                       REPORTER'S TRANSCRIPT

12                    ACCEPT PLEA WITH P.O. REPORT

13    APPEARANCES:
      FOR THE GOVERNMENT:              KAREN P. HEWITT, U.S. ATTORNEY
14                                     BY:  CALEB E. MASON, ESQ.
                                       ASSISTANT U.S. ATTORNEY
15                                     880 FRONT STREET
                                       SAN DIEGO, CA 92101
16
      FOR DEFENDANT (1):               LAW OFFICE OF MICHAEL CROWLEY
17                                     BY:  MICHAEL L. CROWLEY, ESQ.
                                       550 WEST C STREET
18                                     SAN DIEGO, CA 92101

19    FOR DEFENDANT (2):               FRANK & MILCHEN
                                       BY:  HOWARD B. FRANK, ESQ.
20                                     136 REDWOOD STREET
                                       SAN DIEGO, CA 92103
21
      COURT REPORTER:                  EVA OEMICK
22                                     OFFICIAL COURT REPORTER
                                       UNITED STATES COURTHOUSE
23                                     940 FRONT STREET, STE. 2190
                                       SAN DIEGO, CA 92101
24                                     TEL: (619) 615-3103

25
```

1      <u>**SAN DIEGO, CALIFORNIA — MONDAY, MARCH 24, 2008 — 9:30 A.M.**</u>

2              THE CLERK:  CALLING NO. 3 ON THE CALENDAR, 07CR2898,

3      UNITED STATES OF AMERICA VERSUS JORGE DANIEL RAMIREZ—ARMAS AND

4      VERONICA QUINTERO-NAVARRO.

5              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

6      RECORD.

7              MR. MASON:  GOOD MORNING, YOUR HONOR.

8              CALEB MASON FOR THE UNITED STATES.

9              MR. CROWLEY:  MICHAEL CROWLEY ON BEHALF OF

10     MR. RAMIREZ, WHO WILL BE PRESENT BEFORE YOUR HONOR.

11             THE COURT:  GOOD MORNING, MR. CROWLEY AND MR. FRANK.

12             MR. FRANK:  HOWARD FRANK APPEARING ON BEHALF OF

13     VERONICA QUINTERO, WHO IS IN CUSTODY AND WILL BE BEFORE YOUR

14     HONOR SHORTLY.

15             FOR THE RECORD, MS. QUINTERO IS NOW BEFORE THE

16     COURT.

17             MR. CROWLEY:  AS IS MR. RAMIREZ.

18             THE COURT:  IN EACH OF THESE CASES, JUDGE MAJOR SENT

19     ME A REPORT AND RECOMMENDATION URGING ME TO ACCEPT EACH

20     DEFENDANT'S PLEA TO IMPORTING METHAMPHETAMINE.  SHE SAYS THAT

21     THE PLEAS WERE ENTERED KNOWINGLY, VOLUNTARILY AND

22     INTELLIGENTLY.

23             MR. FRANK, ON BEHALF OF YOUR CLIENT, IS THERE ANY

24     OBJECTION TO ME ACTING AFFIRMATIVELY ON THE REPORT AND

25     RECOMMENDATION AND ACCEPTING HER PLEA?

3

1            MR. FRANK:  NO, YOUR HONOR.

2            THE COURT:  MR. CROWLEY, AS TO MR. RAMIREZ,

3    LIKEWISE, IS THERE ANY OBJECTION?

4            MR. CROWLEY:  NO OBJECTION, YOUR HONOR.

5            THE COURT:  IN EACH CASE, I ADOPT JUDGE MAJOR'S

6    REPORT AND RECOMMENDATION.  I EMBRACE AND ADOPT HER FINDINGS.

7    I FIND THE PLEAS WERE TAKEN IN COMPLIANCE WITH RULE 11, AND I

8    DO ACCEPT THEM.

9            WITH RESPECT TO MS. QUINTERO, I'VE READ THE

10   PRE-SENTENCE REPORT.

11           HAVE YOU HAD A CHANCE TO GO OVER THAT WITH YOUR

12   CLIENT, MR. FRANK?

13           MR. FRANK:  I HAVE, YOUR HONOR.

14           THE COURT:  I'VE LOOKED AT THE FOLLOWING ADDITIONAL

15   DOCUMENTS.  THERE IS PLEA AGREEMENT IN THE CASE, WHICH I'VE

16   READ AND CONSIDERED.  THERE'S A SENTENCING MEMORANDUM FILED BY

17   MR. FRANK, AND IT INCLUDES A REQUEST FOR DOWNWARD DEPARTURES.

18   THE GOVERNMENT HAS FILED A SENTENCING SUMMARY CHART, AS HAS

19   MR. FRANK.  I HAVE LOOKED AT ALL OF THAT.

20           IS THERE ANY OTHER DOCUMENTATION I SHOULD HAVE

21   CONSIDERED IN CONNECTION WITH SENTENCING, MS. QUINTERO?

22           MR. FRANK:  NOTHING ELSE HAS BEEN SUBMITTED, YOUR

23   HONOR.

24           THE COURT:  AS TO MR. RAMIREZ, MR. CROWLEY, I HAVE

25   LIKEWISE LOOKED AT THE PRE-SENTENCE REPORT.

4

1          HAVE YOU HAD A CHANCE TO GO OVER THAT WITH HIM?

2          MR. CROWLEY:  I HAVE, YOUR HONOR.

3          THE COURT:  I LOOKED AT HIS PLEA AGREEMENT AS WELL.

4          YOU AND THE GOVERNMENT FILED SENTENCING SUMMARY

5    CHARTS.  I'VE REVIEWED BOTH OF THE THOSE.  IN ADDITION, YOU

6    FILED A SENTENCING MEMORANDUM ON BEHALF OF MR. RAMIREZ.  IT

7    INCLUDED A NUMBER OF PRAISEWORTHY LETTERS AND LETTERS THAT

8    GAVE SOME ADDITIONAL CONTEXT TO HIS LIFE AND CIRCUMSTANCES.  I

9    HAVE READ AND CONSIDERED THOSE.

10          IS THERE ANYTHING ELSE?

11          MR. CROWLEY:  I DID FILE AN OBJECTION TO THE

12   PRE-SENTENCE REPORT JUST AS TO A SINGLE --

13          THE COURT:  I DIDN'T RECITE THAT.  LET ME MAKE SURE

14   THAT I SAW IT AND CONSIDERED IT.

15          MR. CROWLEY:  I DO HAVE A COPY.

16          THE COURT:  DID IT HAVE TO DO WITH THE CRIMINAL

17   HISTORY REPORT?

18          MR. CROWLEY:  NO.  THE ROLE, MINOR ROLE.

19          THE COURT:  I'M UNSURE WHETHER I RECEIVED THAT.  I

20   DON'T RECALL IT.  YOU MAY -- IF YOU HAVE IT, YOU MAY GIVE A

21   COPY TO THE CLERK.  I'LL CERTAINLY CONSIDER IT NOW.

22          I'VE READ AND CONSIDERED THE OBJECTION.  PROBATION

23   FOUND NO BASIS FOR MINOR ROLE, ALTHOUGH THE GOVERNMENT HAS

24   RECOMMENDED THAT AS PART OF ITS PLEA AGREEMENT IN THE CASE.

25          WE'RE PUTTING THE CART BEFORE THE HORSE A LITTLE

5

1    BIT, MR. CROWLEY.  BUT IN MY OWN NOTES AND CONSIDERATION OF

2    THE MATTER, I FOUND MYSELF IN AGREEMENT WITH PROBATION THAT

3    THIS IS NOT A MINOR ROLE.

4          MERE COURIER DOESN'T ADD ANYTHING BUT RHETORIC TO

5    THE ANALYSIS, FROM MY PERSPECTIVE.  I UNDERSTAND THAT THE

6    PERSON WHO TRANSPORTS DRUGS IS NOT FORECLOSED FROM GETTING A

7    MINOR ROLE EVEN IN AN IMPORTATION CASE.  I UNDERSTAND THAT.

8    BUT IT'S HARDLY INEXORABLE, IF YOU TAKE DRUGS ACROSS FROM

9    MEXICO INTO THE UNITED STATES, THAT NECESSARILY YOUR ROLE IS

10   SIGNIFICANTLY LESS CULPABLE THAN THE AVERAGE PARTICIPANT,

11   WHICH IS THE STANDARD UNDER THE GUIDELINES.

12         I ALSO, LOOKING TO THE FACTS OF THIS CASE, JUST

13   DON'T SEE A MINOR ROLE.  HERE'S A FELLOW THAT'S IN THIS UP TO

14   HIS HIPS.  HE MAKES A NUMBER OF RUNS, TEST RUNS.  HE'S MADE

15   SEVERAL TRIPS ACROSS THE BORDER, IF I'M TO BELIEVE WHAT I READ

16   IN THE CO-DEFENDANT'S SENTENCING PAPERS.  THROUGH VIOLENCE AND

17   INTIMIDATION, HE GOT HER INVOLVED.

18         MR. CROWLEY:  I WOULD OBJECT TO ANY USE OF THAT

19   LAST PART.

20         THE COURT:  HAVE YOU SEEN THOSE PAPERS?

21         MR. CROWLEY:  I HAVE NOT SEEN ANY PAPERS, NO, OTHER

22   THAN I KNOW OF THE ALLEGATIONS.

23         THE COURT:  I WILL GIVE HIM A CHANCE TO BE

24   CONFRONTED BY THE INFORMATION AND LET YOU RESPOND TO THAT AS

25   WELL.  I CAN HARDLY SENTENCE HER WHEN MR. FRANK ASKED ME TO

1   FIND A MITIGATING ROLE IN HER CASE AND CREDIT HER ACCOUNT AND

2   YET IGNORE IT WHEN IT COMES TO HIM.  I TAKE YOUR POINT THAT

3   HE'S ENTITLED TO BE CONFRONTED BY THAT AND RESPOND TO IT.

4        MR. CROWLEY:  I WOULD REQUEST AN EVIDENTIARY HEARING

5   CONCERNING --

6        THE COURT:  WE MAY GET TO THAT.  BUT EVEN LEAVING

7   THAT ASIDE, MR. CROWLEY, I JUST DON'T SEE A MINOR ROLE ON

8   THIS.  I THINK PROBATION HAS GOT IT RIGHT.  I THINK THAT IN

9   THIS CASE, IT'S A CLASSIC INSTANCE OF USING THE GUIDELINES TO

10  TRY TO EFFECT A RESULT RATHER THAN ANY MEANINGFUL ATTEMPT TO

11  APPLY THEM FAITHFULLY AND APPLY THAT STANDARD OF SIGNIFICANTLY

12  LESS CULPABLE.

13       I DON'T MEAN THIS PERSONALLY TO THE PROSECUTOR, BUT

14  I THINK HE'D HAVE A HARD TIME STANDING IN FRONT OF AN

15  ASSEMBLED GROUP AND SAYING, "WHAT THIS GUY DID THAT MAKES HIM

16  SIGNIFICANTLY LESS CULPABLE THAN THE AVERAGE PARTICIPANT IN

17  THIS WITH TEN PRIOR RUNS AND INVOLVED IN THIS AND THIS AMOUNT

18  OF METHAMPHETAMINE" -- WHAT'S MINOR ABOUT THIS?

19       WE COULD GO DOWN ON FRONT AND BROADWAY AND CATCH THE

20  FIRST TEN PEOPLE GETTING OFF THE BUS AND SAY, "HERE ARE THE

21  CIRCUMSTANCES.  HOW WOULD YOU CHARACTERIZE THIS?"  I DARE SAY

22  NO ONE WOULD SAY IT'S MINOR OR THAT THERE IS SOME KIND OF

23  MITIGATING ROLE INVOLVED HERE.

24       ANYWAY, I OVERRULE THE OBJECTION.  I'M NOT GOING TO

25  FORECLOSE YOU FROM ARGUING IT FURTHER AND TRYING TO PERSUADE

7

1    ME.  I LOOKED AT IT.  I WENT OVER THE PROBATION REPORT

2    CAREFULLY AND MADE NOTES TO MYSELF ABOUT THE FACTS AND

3    CIRCUMSTANCES.  I HAVE TRIED FAITHFULLY TO APPLY THEM.

4        YOU'VE BEEN HERE BEFORE.  IF IT'S UP TO TWO POINTS,

5    MR. CROWLEY, I GO ALONG WITH IT.  I'M BUFFETED BY THE NEED FOR

6    PREDICTABILITY IN PLEA AGREEMENTS.  BUT WHEN THE EFFECT OF

7    PHONY MINOR ROLE ADJUSTMENT OR WHAT I FIND TO BE AN

8    ILLEGITIMATE MINOR ROLE ADJUSTMENT AFFECTS MORE THAN A

9    TWO-POINT REDUCTION IN THE GUIDELINE LEVEL, THEN I RESERVE THE

10   RIGHT TO LOOK AT IT, MAKE AN INDEPENDENT JUDGMENT, AND APPLY

11   THE STANDARD.  I'VE TRIED TO DO THAT HERE.  IT DOES NOT LEAD

12   ME TO THE SAME CONCLUSION THAT THE GOVERNMENT RECOMMENDS.

13       SO I'M HAPPY TO HEAR FROM YOU.  I DO OVERRULE THE

14   OBJECTION.

15       MAYBE I SHOULD HEAR FROM MR. FRANK AND MS. QUINTERO

16   FIRST.  BECAUSE, AS I SAID, I THINK IF THERE'S A NEED FOR A

17   HEARING, WE'LL GET TO THAT.

18       MR. FRANK.

19       MR. FRANK:  YOUR HONOR, THANK YOU.

20       YOUR HONOR KNOWS FROM READING THE DOCUMENTS THAT THE

21   COURT ALLUDED TO THAT MS. QUINTERO IS AN INDIVIDUAL WHO HAS NO

22   PRIOR RECORD.  HER ROLE IN THIS CASE WAS THAT OF A PASSENGER

23   IN A VEHICLE THAT CONTAINED A SUBSTANTIAL AMOUNT OF CONTRABAND

24   ATTEMPTING TO ENTER THE UNITED STATES.

25       THE COURT:  ON MORE THAN ONE OCCASION.

8

1          MR. FRANK:  YES, YOUR HONOR, BY HER OWN ADMISSION.

2    AND I THINK HER OWN ADMISSION IS CONSISTENT WITH NOT ONLY A

3    TOTAL ACCEPTANCE OF RESPONSIBILITY, BUT GENUINE REMORSEFULNESS

4    FOR HAVING BEEN INVOLVED TO THAT EXTENT, HOWEVER IT'S

5    CHARACTERIZED.

6          THE COURT:  I SEE IT IN HER CASE.  I THINK PROBATION

7    HAS RECOMMENDED IT, ALSO.

8          MR. FRANK:  THEY HAVE.  --

9          THE COURT:  I'VE ANALYZED IT IN HER CASE.  I THINK

10   NOTWITHSTANDING THAT IT WAS THE SECOND TIME -- AT LEAST THE

11   SECOND TIME THAT SHE WAS INVOLVED, THAT HER ROLE WAS LIMITED

12   TO ESSENTIALLY WINDOW DRESSING TO ALLAY THE SUSPICIONS OF THE

13   BORDER GUARDS BY HAVING A SECOND PERSON IN THERE.  I DO FIND

14   THAT TO BE SUBSTANTIALLY LESS CULPABLE THAN THE OTHER KNOWN

15   PARTICIPANTS.  I'M PREPARED TO FIND A MINOR ROLE IN HER CASE.

16          NOW, I THINK IT'S FAIR BECAUSE, AS I TOLD

17   MR. CROWLEY, YOU'VE MADE ALLEGATIONS THAT SHE WAS KEPT

18   INVOLVED IN THIS BY AN ABUSIVE RELATIONSHIP AND, TO SOME

19   EXTENT, BY THREATS AND PHYSICAL VIOLENCE BY THE DEFENDANT.  I

20   READ THAT.  I TOOK IT INTO CONSIDERATION IN NOT ONLY

21   EVALUATING HER CASE, BUT ALSO IN THE RECOMMENDATION FOR ROLE

22   IN HIS CASE.

23          I THINK IT'S INCUMBENT UPON YOU TO MAKE SOME

24   PROFFERS.  AND IF THOSE THINGS ARE DISPUTED, THEN WE MIGHT

25   HAVE TO HAVE A HEARING ON THAT BECAUSE IT IS -- IT DOES INFORM

9

1    MY THINKING ON THIS ISSUE OF ROLE INSOFAR AS MR. RAMIREZ IS

2    CONCERNED.

3           MR. FRANK:  YOUR HONOR, THE REFERENCES I MADE TO

4    THAT ISSUE IN MY SENTENCING MEMORANDUM AND MY MOTION FOR

5    DOWNWARD DEPARTURE WAS THE INFORMATION THAT I OBTAINED

6    PRIMARILY FROM THE PROBATION REPORT.  YOUR HONOR WILL RECALL

7    SEEING THE SAME ALLEGATIONS IN THE PROBATION REPORT AS WERE IN

8    THAT ONE PORTION OF MY MOTION FOR DOWNWARD DEPARTURE.

9           I WOULD SUBMIT THAT ASIDE FROM THE ISSUES RELATED TO

10    THE RELATIONSHIP WITH THE CO-DEFENDANT, YOUR HONOR KNOWS OF

11    THE SEXUAL ABUSE THAT MS. QUINTERO WAS A VICTIM OF IN HER

12    EARLIER DAYS AS A YOUNGSTER FROM VARIOUS FAMILY MEMBERS.  AND

13    I SUBMIT, AS I INDICATED IN MY MEMORANDUM, THAT THE

14    COMBINATION, YOUR HONOR, SURELY WERE CONTRIBUTING FACTORS IN

15    HER DECISION TO PLAY THE ROLE THAT SHE DID IN THIS MATTER AND,

16    MORE IMPORTANTLY, I THINK IN COMBINATION WITH THE OTHER

17    FACTORS THAT I ADDRESSED IN MY MEMORANDUM, ABSOLUTELY MAKE IT

18    APPROPRIATE FOR AN ADDITIONAL DOWNWARD DEPARTURE FOR A

19    COMBINATION OF FACTORS.

20           THE COURT:  HAVE YOU HAD ACCESS, MR. CROWLEY, TO THE

21    PROBATION REPORT FOR THE CO-DEFENDANT?

22           MR. CROWLEY:  MR. FRANK HAS MADE THAT AVAILABLE.

23           THE COURT:  IN PARTICULAR, THE ALLUSION THAT HE

24    MAKES IN THE SECOND-TO-LAST PARAGRAPH ON PAGE 8 OF

25    MS. QUINTERO'S PROBATION REPORT.  SHE OUTLINES A HISTORY OF

1    ABUSE AT THE HANDS OF MR. RAMIREZ.  THOSE THINGS, I THINK, ARE

2    RELEVANT TO THIS WHOLE ISSUE OF ROLE.  IT HAS A TENDENCY IN

3    REASON TO AFFECT MY THINKING ON WHO IS IN CHARGE HERE AND WHO

4    MAY BE ACTING AT THE DIRECTION OF SOMEONE ELSE IN A

5    SUBSERVIENT POSITION, AND THAT'S THE ROLE DETERMINATION.

6         THAT'S IT AS FAR AS THAT ASPECT OF ROLE.  AS I TOLD

7    YOU, THERE ARE OTHER THINGS STANDING ALONE INDEPENDENT OF HIS

8    RELATIONSHIP WITH MS. QUINTERO THAT LEAD ME TO REJECT THE

9    MINOR ROLE RECOMMENDATION IN HIS CASE.  IF YOU THINK THERE'S

10   ANY OF THAT THAT IS CONTESTED, THEN I THINK WE PROBABLY SHOULD

11   HAVE A HEARING ON IT.

12        MR. CROWLEY:  IT'S ALL CONTESTED.  I HAVE TALKED TO

13   MY CLIENT ABOUT IT.  I'VE HANDLED MANY DOMESTIC VIOLENCE CASES

14   ON THE STATE SIDE.  AND, OF COURSE, WE INVESTIGATE FROM ALL

15   ANGLES BECAUSE THEY HAVE LOTS OF DIFFERENT DYNAMICS TO THEM.

16        I DID NOT UNDERTAKE TO DO THAT IN THIS PARTICULAR

17   CASE FRANKLY HOPING THAT THE COURT WOULD SAY "OKAY.  THAT'S A

18   CONCERN FOR HER," BUT THEN WOULDN'T USE IT AGAINST MY CLIENT.

19   IF I'M MISTAKEN, THEN I WOULD REQUEST A CONTINUANCE TO BE ABLE

20   TO INVESTIGATE THAT.

21        THE COURT:  HOW LONG DO YOU NEED?

22        MR. CROWLEY:  I WOULD SAY ABOUT FOUR WEEKS TO BE

23   ABLE TO INVESTIGATE.  IT'S OUT OF TOWN, THE ISSUES, THE PEOPLE

24   THAT WE WOULD TALK TO.  IT'S NOT LIKE IT'S A LOCAL DOMESTIC

25   VIOLENCE CASE, DOMESTIC VIOLENCE ISSUE.  AND A LOT OF WHAT WE

11

1    DEAL WITH IN DOMESTIC VIOLENCE CASES, OF COURSE, ARE WHERE THE

2    INCENTIVES TO GIVE CERTAIN TYPES OF INFORMATION COME ABOUT.

3    AND OFTENTIMES WHEN IT COMES DOWN TO TRIAL, IT'S A LITTLE BIT

4    DIFFERENT THAN WHAT IS SAID --

5              THE COURT:  MR. FRANK, I HAVE TO BE HONEST.  IT DOES

6    AFFECT MY THINKING AS TO BOTH DEFENDANTS.  I CAN SEE HER IN A

7    SITUATION WHERE IT MIGHT BE AGAINST HER BETTER JUDGMENT TO GO

8    ALONG WITH HIM IN THIS ENTERPRISE EVEN ALBEIT IT AS A

9    PASSENGER.  BUT BASED ON A HISTORY OF ABUSE, SHE'S AFRAID TO

10   SAY NO TO HIM.

11             NOW, DOES THAT AFFECT MY JUDGMENT ABOUT WHETHER SHE

12   HAD A MINOR ROLE IN THE CASE?  OF COURSE IT DOES.  DOES IT

13   AFFECT MY JUDGMENT ABOUT WHETHER HE'S ENTITLED TO A MINOR ROLE

14   ADJUSTMENT AS HE'S ADVOCATING?  OF COURSE IT DOES.  IF IT'S

15   DISPUTED STUFF, I THINK I NEED TO GIVE MR. RAMIREZ, THROUGH

16   HIS COUNSEL, AN OPPORTUNITY TO DISPUTE IT.  THEN I'LL MAKE A

17   FINAL DECISION.

18             IT AFFECTS BOTH YOUR APPLICATION, WHICH I'M INCLINED

19   TO GRANT FOR MINOR ROLE REDUCTION, AND MR. CROWLEY'S, WHICH

20   I'M INCLINED NOT TO GRANT.  I SUPPOSE I COULD DO THIS:  I

21   SUPPOSE I COULD PARSE IT AND SAY, "WE'LL PUT THAT ASIDE.

22   THERE'S STILL ENOUGH HERE FOR ME TO DENY MINOR ROLE."  BUT IT

23   HAS AFFECTED MY THINKING IN READING THAT.  IT'S NECESSARILY

24   PART OF THE CALCULUS ON WHO IS CULPABLE HERE AS BETWEEN THESE

25   DEFENDANTS AND HOW MUCH.

12

1          MR. FRANK:  I UNDERSTAND WHAT THE COURT IS SAYING.

2    BUT IT WOULD SEEM TO ME IN THIS UNIQUE SITUATION WHERE

3    MS. QUINTERO IS A PASSENGER AS OPPOSED TO THE DRIVER, THAT

4    THAT PUTS HER IN A DIFFERENT SITUATION THAN THE COURT NORMALLY

5    ADDRESSES IN THE TYPICAL BORDER BUST CASE.  AND REGARDLESS OF

6    THE UNDERLYING VERACITY OF THAT ASPECT OF THE CASE, IT SEEMS

7    TO ME THAT SHE LEGITIMATELY SHOULD RECEIVE CONSIDERATION FOR

8    MINOR ROLE.

9          THE COURT:  HERE'S THE WILD CARD, THOUGH:  SHE DID

10   IT TWICE.  SHE WAS A PASSENGER TWICE, NOT ONCE.  IF IT'S A

11   ONE-TIME DEAL THAT SOMEBODY'S ALONG AS A PASSENGER, I GET IT.

12   BUT YOU SUCCESSFULLY CROSS, AND THEN YOU SAY "I'M ONBOARD

13   AGAIN.  I'LL BE A PASSENGER AGAIN AND TRY TO ALLAY IT," THEN

14   IT'S MORE QUESTIONABLE, I THINK, WHETHER THE PERSON WHO'S GOT

15   A TRACK RECORD OF HELPING TO BRING DOPE IN AND ASSISTS A

16   SECOND TIME SHOULD BE CONSIDERED TO HAVE A SIGNIFICANTLY

17   DIMINISHED ROLE.

18          NOW, IF I CONSIDER THAT SHE'S INTIMIDATED BY THIS

19   FELLOW AND MAY NOT HAVE A FULL RANGE OF CHOICE IN THE CASE,

20   THEN THAT MAY EXPLAIN WHY SHE'S ALONG A SECOND TIME.  AND WE

21   MAY BE BACK AT SQUARE ONE WHERE I SAY, "YOU'RE RIGHT.  HER

22   ROLE IS SIGNIFICANTLY DIMINISHED."

23          I'M JUST TELLING YOU THE INFORMATION HAS COME IN,

24   AND I READ EVERYTHING.  I GIVE IT CONSIDERATION.  I LOOK AT IT

25   IN THE GOOD FAITH THAT IT WAS OFFERED.  BUT IF I DO THAT HERE,

13

1    THESE ARE THE INFERENCES AND IMPLICATIONS THAT ARISE FROM IT.

2    IF IT HAPPENED THIS WAY, THEN SHE SHOULD BE PREPARED TO TELL

3    ME IF IT HELPS HER.  BUT IF IT'S TRUE, THEN SHE'S GOT NOTHING

4    TO WORRY ABOUT, AT LEAST WITH ME.

5             MR. FRANK:  I UNDERSTAND.  AND ALTHOUGH MS. QUINTERO

6    VERY MUCH WANTED TO PROCEED THIS MORNING, IT WOULD SEEM, BASED

7    ON THE CONCERNS THE COURT HAS, THAT IT WOULD BE IN HER BEST

8    INTEREST TO ABIDE BY THE COURT'S INCLINATION AND TO GO ON WITH

9    A CONTINUANCE.

10            I WOULD MAKE JUST ONE OBSERVATION, HOWEVER, IF I

11   CAN, BRIEFLY, YOUR HONOR.  THAT IS THE COMMENT THAT YOUR HONOR

12   JUST MADE IS SOMEWHAT TROUBLING TO ME IN THAT ONE OF THE

13   FACTORS YOUR HONOR IS CONSIDERING IS THE FACT THAT THERE MAY

14   HAVE BEEN MORE THAN ONE OCCASION THAT MS. QUINTERO ACCOMPANIED

15   THE CO-DEFENDANT.  THAT'S INFORMATION THAT'S AVAILABLE BECAUSE

16   OF HER HONESTY.

17            AND IT'S REALLY TROUBLESOME TO HAVE A DEFENDANT IN A

18   POSITION OF BEING TOTALLY REMORSEFUL, COMPLETELY ACCEPTING

19   RESPONSIBILITY, AND, IN DOING SO, FOLLOWING COUNSEL'S ADVICE

20   AND BEING TRUTHFUL WITH THE PROBATION OFFICER AND THEN FACING

21   THE POSSIBILITY OF EITHER ADDITIONAL PUNISHMENT OR NOT GETTING

22   A BENEFIT SHE OTHERWISE WOULD FOR ONE REASON, FOR BEING

23   HONEST, THAT'S TROUBLESOME.

24            THE COURT:  IT'S NOT REALLY FOR ONE REASON.  IT

25   WOULD BE AN IRONY, INDEED, IF I PUNISHED HER FOR BEING HONEST.

14

1    I'M SUPPOSED TO LOOK AT THE REAL OFFENSE HERE, WHAT REALLY

2    HAPPENED.  AND TO SAY, "WELL, IT'S WAY MORE AGGRAVATING,

3    JUDGE, THAN IT APPEARS FROM THIS ONE INCIDENT, BUT YOU CAN'T

4    CONSIDER ANY OF THAT BECAUSE THE DEFENDANTS TOLD THAT IN THEIR

5    PROBATION INTERVIEWS."

6           NOW, I'M BUFFETED TO SOME EXTENT.  I DON'T WANT TO

7    PUNISH HER FOR COMING CLEAN ON THINGS THAT WERE OTHERWISE NOT

8    KNOWN.  I'M NOT INCLINED TO DO THAT.  I NOTE THAT SHE'S GIVEN

9    FULL CREDIT FOR ACCEPTANCE OF RESPONSIBILITY, AND I THINK

10   THERE'S EVEN A --

11          ISN'T THERE A FAST TRACK RECOMMENDATION HERE?

12          MR. MASON:  YES, YOUR HONOR.

13          THE COURT:  WHICH, IN PART, TAKES INTO CONSIDERATION

14   HOW FORTHCOMING SHE IS.  SO I THINK SHE IS GETTING CREDIT FOR

15   THOSE THINGS.  AS A PRACTICAL MATTER, I'LL TELL YOU I

16   APPRECIATE THE CONCERN YOU REACHED THAT IT CAME FROM HER.  AND

17   I'LL TAKE THAT INTO CONSIDERATION.

18          IN THE END, THOUGH, MR. FRANK, THE ALTERNATIVE IS

19   NOT FOR ME TO IGNORE THE TRUE SCOPE OF WHAT HAPPENED HERE AND

20   TO CHARACTERIZE IT AS IF I DON'T KNOW WHAT ALL THE FACTS ARE.

21   I DO.  I THINK IT'S GOOD LAWYERING, AS A MATTER OF FACT.  AND

22   I THINK YOU KNOW THAT WITH ME, AT LEAST, TO HAVE THE CLIENT TO

23   AS FORTHCOMING AS POSSIBLE.  AND I THINK IN THE END, IT ONLY

24   HELPS A CLIENT HERE WHO'S LIKE THAT RATHER THAN ONE THAT

25   STICKS TO A SCRIPT AND SAYS "I'M ONLY GOING TO ADMIT THE

15

1    MINIMUM ELEMENTS" AND THEN COMES IN AND ASKS ME FOR A ROLE

2    ADJUSTMENT, FOR EXAMPLE.  I DON'T GET THAT.  THAT'S NOT

3    CONSISTENT WITH ASKING ME TO EXERCISE DISCRETION FAVORABLY.

4         SO I TAKE YOUR POINT.  SHE'S NOT GOING TO BE

5    PUNISHED FOR BEING FORTHCOMING.  AT THE SAME TIME, I'M NOT

6    GOING TO IGNORE THE ENTIRE SCOPE OF THIS THING AND LOOK AT IT

7    AS IF IT'S A ONE-TIME DEAL WHEN EVERYBODY KNOWS IT WAS NOT A

8    ONE-TIME DEAL.

9         SO THAT'S WHERE WE'RE AT.  IF SHE -- I UNDERSTAND

10   SHE WANTS TO GO FORWARD TODAY.  I THINK MR. CROWLEY'S REQUEST

11   IS REASONABLE FOR A PERIOD OF TIME TO EXAMINE THIS.  I'M

12   CONCERNED ONLY WITH THE SECOND-TO-THE-LAST PARAGRAPH ON PAGE 8

13   AND THE ALLEGATIONS THERE.  THEY'RE LARGELY REPEATED.

14        MR. FRANK, DO YOU HAVE ANY OBJECTION TO SHOWING HIM

15   THE SENTENCING BRIEF YOU FILED ON BEHALF OF MS. QUINTERO?

16        MR. FRANK:  ABSOLUTELY NOT.

17        MR. CROWLEY:  THAT WAS FILED, ALSO.  IF I CAN FOR A

18   MOMENT, THE COURT APPEARS TO BE FOCUSING THIS ISSUE ON THE

19   MINOR ROLE DETERMINATION.

20        THE COURT:  THAT'S HOW I SEE IT.  IT'S NOT

21   DISPOSITIVE, BUT IT INFORMS MY THINKING ON THIS.  I THINK

22   THAT'S THE STANDARD FOR A HEARING UNLESS I'M PREPARED TO TELL

23   YOU AND MR. RAMIREZ "IT'S LIKE A DROP OF INK IN A GALLON OF

24   MILK.  I'LL SHAKE THIS UP AND IT WILL BE ALL GONE AND I WON'T

25   REMEMBER THAT WE DROPPED THAT INK IN THERE."  I CAN'T DO THAT.

1    THAT'S PART OF IT.

2            MR. CROWLEY:  LET ME SAY THIS FOR THE MOMENT:  I

3    CERTAINLY, OF COURSE, SEE A DISTINCTION BETWEEN THE TWO

4    DEFENDANTS IN THIS CASE.  THE COURT HAS ELUCIDATED REASONS WHY

5    MR. RAMIREZ SHOULD NOT GET THE MINOR ROLE.  I PERSONALLY

6    DISAGREE WITH THAT.  IT'S BROADER THAN THE COURT NARROWS IT.

7            BUT THERE ARE SEPARATE REASONS.  IF WE CAN

8    COMPARTMENTALIZE THIS ISSUE, QUITE FRANKLY, IN THINKING ABOUT

9    THE BIGGER PICTURE, BOTH, I BELIEVE, DESPITE ALLEGATIONS,

10   STILL TALK VERY FONDLY ABOUT EACH OTHER.  THERE'S STILL A

11   RELATIONSHIP THERE.

12           I'M NOT EXCITED ABOUT THE FACT OF DESTROYING THAT

13   IF, IN FACT, IT'S STILL THERE, WHICH IS BOTH -- AT LEAST MY

14   CLIENT HAS ASSURED ME OF THAT, AND I BELIEVE MR. FRANK.

15           IF THE DETERMINATION CONCERNING THAT LAST PARAGRAPH

16   IS ONLY TO THE MINOR ROLE, WITHOUT WAIVING MY CLIENT'S RIGHTS

17   CONCERNING THE ADDITIONAL ISSUES, WE'D BE WILLING TO ACCEPT

18   THAT PART OF THE COURT'S DETERMINATION, BUT WITH THE CAVEAT --

19   I'M CONCERNED, IF THE COURT ACCEPTS THESE ALLEGATIONS WHICH

20   ARE IN DISPUTE, WHEN WE TALK ABOUT THE 3553 FACTORS, FRANKLY,

21   MY CLIENT HERE -- AS PART OF MR. FRANK'S ARGUMENT HERE THAT

22   I'M MAKING TO THIS COURT IS THAT FROM THE DAY OF THE WAKE-UP

23   CALL, FROM WHEN HE GETS ARRESTED, HE HAS DONE EVERYTHING

24   POSSIBLE TO TURN THIS WHOLE THING AROUND; RECOGNIZING IT AND

25   CHANGING HIS LIFE FROM A TO Z.  SO THAT'S A SEPARATE ISSUE.

17

1          THE COURT:  ARE YOU READY TO GO FORWARD?

2          MR. CROWLEY:  YES.

3          THE COURT:  I THINK IT'S MOST RELEVANT TO THE MINOR

4    ROLE DETERMINATION.  IF TRUE, IT'S A LITTLE AGGRAVATING UNDER

5    3553.  BUT I UNDERSTAND THIS IS NOT ADJUDICATED CONDUCT.  I'M

6    NOT PREPARED, WHEN I'M NOT FORCED TO MAKE A LEGAL RULING, TO

7    MAKE A FINDING ON THAT.  IF THAT IS AGREEABLE TO YOU AND

8    MR. RAMIREZ, THEN WE'LL GO FORWARD TODAY.

9          AND YOU WITHDRAW YOUR REQUEST FOR POSTPONEMENT UNDER

10   THAT SCENARIO?

11         MR. CROWLEY:  YES.

12         THE COURT:  MR. FRANK, WHY DON'T YOU CONTINUE.  I'M

13   HAPPY TO HEAR FROM YOU.

14         MR. FRANK:  THANK YOU.

15         THE ISSUE WE'VE BEEN TALKING ABOUT IS JUST ONE OF

16   THE ISSUES CITED IN MY MOTION FOR DOWNWARD DEPARTURE, WHICH I

17   WOULD MOST RESPECTFULLY SUBMIT JUSTIFY AN ADDITIONAL DOWNWARD

18   DEPARTURE UNDER A COMBINATION OF FACTORS.

19         THE RELATIONSHIP WITH THE CO-DEFENDANT, THE SEXUAL

20   ABUSE OF WHICH SHE WAS A VICTIM, AND THE COMBINATION OF HER

21   OWN PERSONAL DRUG USE ALL CONTRIBUTED TO OBVIOUSLY A MISTAKE

22   IN JUDGMENT, TO SAY THE LEAST.  SHE KNOWS THAT SHE'S GOING TO

23   RECEIVE CUSTODY THIS MORNING.

24         BUT I WOULD SUBMIT TO YOUR HONOR WHETHER IT'S A

25   STRAIGHT GUIDELINE APPROACH OR WHETHER IT'S AN APPROACH

18

1    FACTORING IN THE CONSIDERATION OF 18 UNITED STATES CODE

2    SECTION 3553, MY REQUEST FOR A PERIOD OF CUSTODY OF 37 MONTHS,

3    I WOULD SUBMIT, IS MORE THAN APPROPRIATE FOR A 22-YEAR-OLD

4    PASSENGER IN A VEHICLE WITH ABSOLUTELY NO PRIOR RECORD WHO HAD

5    NOTHING TO GAIN AT ALL IN THIS PARTICULAR TRANSACTION.  NOT A

6    PENNY WAS COMING TO HER.

7            YOUR HONOR KNOWS AND IT'S UNDISPUTED SHE HAD NOTHING

8    TO DO WITH ANY ARRANGEMENTS, ANY NEGOTIATIONS, ANY EXCHANGE OF

9    MONEY.  SHE PLAIN AND SIMPLE WAS A PASSENGER KNOWING WHAT HER

10   PRESENCE MIGHT RESULT IN IN TERMS OF THE SAFE PASSAGE THROUGH

11   THE BORDER.

12           BUT 37 MONTHS FOR SOMEBODY LIKE THIS, I WOULD

13   SUBMIT, IS MORE THAN APPROPRIATE.  AND MY SUGGESTION OF A

14   FOUR-LEVEL DOWNWARD DEPARTURE FOR COMBINATION WAS NOTHING MORE

15   THAN A VEHICLE TO GET TO 37 MONTHS, WHICH I WOULD SUBMIT THE

16   COURT CAN GET TO FACTORING IN THE 3553 ITEMS.  I WOULD URGE

17   THE COURT TO CONSIDER THAT AND TO IMPOSE A SENTENCE ALONG

18   THOSE LINES.

19           THE COURT:  MS. QUINTERO, I'M HAPPY TO HEAR FROM YOU

20   WHATEVER ELSE YOU WANT ME TO KNOW BEFORE I DETERMINE AND

21   PRONOUNCE SENTENCING IN YOUR CASE.

22           THE DEFENDANT:  I'M SORRY.  I DIDN'T WANT TO HURT

23   ANYBODY.  I DIDN'T WANT TO HURT MY FAMILY.

24           THE COURT:  ON BEHALF OF THE UNITED STATES.

25           MR. MASON:  THE GOVERNMENT WILL SUBMIT, YOUR

1    HONOR.

2         THE COURT:  THE COURT FINDS AS FOLLOWS UNDER THE

3    GUIDELINES AS TO MS. QUINTERO:  THE BASE OFFENSE LEVEL FOR

4    THIS AMOUNT OF THE PURE METHAMPHETAMINE IS 38.  ORDINARILY,

5    THERE WOULD BE A TWO-POINT ADJUSTMENT UPWARD BECAUSE THE

6    METHAMPHETAMINE WAS IMPORTED FROM MEXICO.  IT DOESN'T APPLY IN

7    THIS CASE BECAUSE, AS I'VE INDICATED, I DO FIND THAT THERE IS

8    AN APPROPRIATE ROLE REDUCTION HERE RECOMMENDED.

9         I DO FIND THAT MS. QUINTERO'S RESPONSIBILITY HERE

10   WAS SUBSTANTIALLY LESS THAN THE AVERAGE PARTICIPANT AND THAT A

11   ROLE REDUCTION, ALTHOUGH IT'S A GENEROUS ONE UNDER THE

12   CALCULATIONS, APPLIES.

13        THIS IS A CASE IN POINT, MR. CROWLEY AND MR. FRANK.

14   THE ROLE REDUCTION HERE EFFECTS AN EIGHT-POINT DIFFERENCE IN

15   THE GUIDELINES.  IT ELIMINATES THE TWO POINTS THAT WOULD BE

16   ADDED BECAUSE METHAMPHETAMINE WAS IMPORTED, WHICH WOULD TAKE

17   THIS UP TO A 40.  IT SCORES THE BEGINNING OFFENSE LEVEL AT A

18   34 RATHER THAN A 38.  THAT'S A SIX-POINT REDUCTION.

19        MR. CROWLEY:  WE LIVE AND DIE WITH SOME OF THE

20   COMMISSION'S COMMENTS THAT MOSTLY HURT US.

21        THE COURT:  INCLUDING DEFINITIONS, ONE OF WHICH IS I

22   HAVE TO BE CONVINCED BY A PREPONDERANCE OF EVIDENCE THAT THE

23   PERSON'S ROLE WAS SUBSTANTIALLY LESS CULPABLE.  NOT FROM THE

24   KINGPINS THAT HAVE PROPRIETARY INTEREST IN THE DRUGS AND

25   SPONSOR THESE THINGS, BUT THE AVERAGE PARTICIPANT.

1       I'M WELL AWARE THAT THESE THINGS HAVE TENTACLES THAT

2    INVOLVE LOTS OF PLAYERS; PEOPLE THAT MAKE THE SUBSTANCE,

3    PACKAGE IT, PUT IT IN THE AUTOMOBILE, PEOPLE THAT PICK IT UP

4    ON THIS SIDE OF THE BORDER.

5       NOW, THERE'S NOT NECESSARILY EVIDENCE OF THAT IN

6    THIS CASE.  BUT I'M WILLING TO EMBRACE THOSE USUAL

7    CHARACTERISTICS HERE.  AND EVEN WITH THAT SAID, THIS ISN'T THE

8    EASIEST CALL BECAUSE THERE WAS A SECOND TIME -- AT LEAST A

9    SECOND-TIME INVOLVEMENT AS A PASSENGER.

10       I DO CREDIT THE ACCOUNT OF MS. QUINTERO IN THIS

11    REGARD AT PAGE 8 IN THE DEFENSE SENTENCING MEMORANDUM.  I'M

12    NOT SURE SHE HAD THE FULL RANGE OF CHOICES.  I THINK TO SOME

13    EXTENT HER CONDUCT WAS BEING CONTROLLED BY MR. RAMIREZ.  SO

14    FOR THAT REASON, NOTWITHSTANDING THAT SHE CROSSED TWICE -- OR

15    HELPED CROSS NARCOTICS TWICE, I STILL FIND THAT HER ROLE WAS

16    SUBSTANTIALLY LESS CULPABLE THAN THE AVERAGE PARTICIPANT.

17       ALL THAT TO SAY THAT THE STARTING OFFENSE LEVEL

18    BECOMES 34.  I DO FIND SHE'S ELIGIBLE FOR SAFETY VALVE.  SO

19    TWO ADDITIONAL POINTS COME OFF FOR ROLE, WHICH DROPS THIS TO A

20    30.  SHE'S ACCEPTED RESPONSIBILITY, WHICH DROPS THIS TO A 27.

21    I GRANT THE MOTION FOR FAST TRACK THAT THE GOVERNMENT'S MADE

22    PURSUANT TO 5K3.1, WHICH DROPS THIS TO A 25.  SHE IS IN

23    CRIMINAL HISTORY CATEGORY 1.

24       THE COURT HAS CONSIDERED ADDITIONAL DEPARTURES.  I

25    FIND THAT I'M NOT INCLINED TO GRANT ADDITIONAL DEPARTURES,

21

1    PER SE.  MY PREFERENCE IS TO CONSIDER THE INFORMATION UNDER

2    3553.  FRANKLY, EVEN THOUGH I UNDERSTAND DEPARTURES ARE STILL

3    AN AVAILABLE VEHICLE, I THINK THEY'RE BESIDE THE POINT.  I

4    THINK THE EQUITIES THAT YOU ARGUE ABOUT HER BACKGROUND I FIND

5    EASIER AT LEAST TO APPLY IN THE CONTEXT OF HISTORY AND

6    CHARACTERISTICS OF A DEFENDANT AND MY OWN COMMON SENSE AND

7    EXPERIENCE.  SO I DECLINE TO DEPART FURTHER.  THE ADVISORY

8    GUIDELINE RANGE IS 57 TO 71 MONTHS.

9         NOW, TURNING TO THE 3553(A) FACTORS -- AND THIS I'LL

10   NOT REPEAT, BUT IT APPLIES TO BOTH DEFENDANTS -- THIS IS A

11   VERY SERIOUS OFFENSE.  OF ALL THE DRUGS THAT ARE BROUGHT

12   ACROSS THE BORDER, I CONSIDER METHAMPHETAMINE TO BE THE MOST

13   NEFARIOUS AND THE MOST DEADLY.  I THINK IT HAS THE MOST

14   PERNICIOUS EFFECT ON OUR COMMUNITY AT THE PRESENT TIME AS WELL

15   AS ON THE PEOPLE WHO ARE ADDICTED TO IT.  IT IS MORE

16   ADDICTING, I'VE FOUND, THAN COCAINE AND MAYBE EVEN HEROIN.

17        THE DAMAGE THAT IT HAS DONE AND CONTINUES TO DO TO

18   OUR COMMUNITY IS VERY PROFOUND.  AND FOR THE DEFENDANTS TO BE

19   INVOLVED IN AN ENTERPRISE WHICH BRINGS THIS POISON INTO THE

20   COMMUNITY, IT'S A TERRIBLE BLOTCH ON BOTH OF THEIR RECORDS.

21        THIS FEELING I'VE JUST EXPRESSED ABOUT THIS IS ALSO

22   REFLECTED IN THE PENALTIES THAT CONGRESS PROVIDES FOR THIS.

23   THERE'S A TEN-YEAR MANDATORY MINIMUM UNDER MOST CIRCUMSTANCES.

24   THAT'S THE PRESUMPTIVE LEVEL FOR SOMEBODY DEALING IN THIS

25   AMOUNT OF METHAMPHETAMINE.  AND THE PENALTY GOES ALL THE WAY

1    UP TO LIFE.  AND I'M ASSUMING THAT THERE MUST BE SOMEBODY

2    SOMEWHERE WHO QUALIFIES FOR A LIFE SENTENCE FOR DOING THIS.

3    IT'S VERY SERIOUS, AND THE PENALTY SCHEME BESPEAKS THAT.

4         NOW, LOOKING TO THE HISTORY AND CHARACTERISTICS OF

5    MS. QUINTERO, I THINK THERE ARE EQUITIES HERE.  MR. FRANK HAS

6    ADVANCED THOSE.  ASIDE FROM THE ABUSE ALLEGED AT THE HANDS OF

7    MR. RAMIREZ, WHICH I'VE CONSIDERED FOR ROLE AND WILL NOT

8    OTHERWISE CONSIDER AGAINST HIM IN A NEGATIVE WAY, I DO FIND

9    THAT THAT'S AN EQUITY.  THAT HAS NOT BEEN FULLY ACCOUNTED FOR

10   EVEN THOUGH THERE WAS A SUBSTANTIAL ROLE REDUCTION.  MR. FRANK

11   HAS ASKED ME TO LOOK BEYOND THAT AT OTHER ABUSE THAT SHE

12   SUFFERED.  AND THAT'S DOCUMENTED.  I DON'T THINK THERE'S A

13   DISPUTE.

14        SHE, AT 22 YEARS OLD, HAS NOT HAD THE SAME SET OF

15   OPPORTUNITIES THAT MOST 22-YEAR-OLD WOMEN HAVE HAD.  AND SHE'S

16   OVERCOME A LOT OF ADVERSITY.  I THINK THAT'S A MITIGATING

17   FACTOR AND A SYMPATHETIC FACTOR TO BE SURE HERE.

18        I LOOK AT THE NEED TO PROMOTE RESPECT FOR THE LAW.

19   AGAIN, I THINK I'VE SPOKEN TO THAT IN TALKING ABOUT THE

20   PROBLEM THAT METHAMPHETAMINE POSES IN OUR COMMUNITY.  I THINK

21   IT'S TIED TOGETHER WITH SOME OF THE SAME CONCERNS I'VE

22   PREVIOUSLY ARTICULATED.

23        NEED FOR DETERRENCE.  I DOUBT THAT MS. QUINTERO WILL

24   GET INVOLVED IN SOMETHING LIKE THIS AGAIN.  EVEN UNDER THE

25   CIRCUMSTANCES OF HAVING SOMEONE PRESENT A SUPERIOR ROLE TO HER

23

1    AND TRYING TO PRESSURE HER, I THINK SHE IS GOING TO PAY A

2    HEAVY PRICE FOR THIS.  THAT WILL BE A SPECIFIC DETERRENT TO

3    HER.

4         THERE IS ANOTHER ASPECT OF THIS, GENERAL DETERRENCE.

5    AND I THINK THAT THE SENTENCE NEEDS TO REFLECT THAT THERE'S A

6    HEAVY PENALTY TO PAY.  AND SO PEOPLE WHO ARE AWARE OF THIS AND

7    IN A SITUATION SIMILAR TO THAT WHICH MS. QUINTERO FOUND

8    HERSELF IN SAID, "IT'S NOT WORTH IT.  EVEN IF I'VE GOT TO WALK

9    AWAY FROM THIS GUY, IT'S NOT WORTH IT BECAUSE I'M NOT GOING TO

10   BE SUBJECT TO GOING TO JAIL FOR FIVE OR TEN YEARS OR 57 MONTHS

11   OR 37 MONTHS."  SO I DO THINK THAT IS IN PLAY HERE AS WELL.

12        I ALSO AM ACUTELY AWARE OF THE KINDS OF SENTENCES

13   THAT HAVE BEEN IMPOSED FOR THIS AMOUNT OF THIS DRUG IN AN

14   IMPORTING SITUATION.  I DO THIS ON A REGULAR BASIS.  I HAVE

15   THAT IN THE BACK OF MY MIND AS WELL.

16        IN THE END, THE COURT FINDS THE MOST APPROPRIATE

17   SENTENCE IN MS. QUINTERO'S CASE, TAKING INTO CONSIDERATION ALL

18   THAT I HAVE DISCUSSED, IS 48 MONTHS.  I DO IMPOSE A 48-MONTH

19   SENTENCE.

20        THAT'S TO BE FOLLOWED BY A MANDATORY MINIMUM

21   SUPERVISED RELEASE TERM OF FIVE YEARS.  HERE ARE THE

22   CONDITIONS OF SUPERVISED RELEASE:

23        MS. QUINTERO, YOU'RE NOT TO POSSESS FIREARMS,

24   EXPLOSIVE DEVICES, OR OTHER DANGEROUS WEAPONS.  YOU'RE TO

25   PROVIDE COMPLETE DISCLOSURE OF YOUR PERSONAL AND FINANCIAL

24

1   BUSINESS RECORDS TO THE PROBATION OFFICER AS REQUESTED.

2   YOU'RE TO PARTICIPATE IN A PROGRAM OF DRUG OR ALCOHOL ABUSE

3   TREATMENT, INCLUDING DRUG TESTING AND COUNSELING AS DIRECTED

4   BY THE PROBATION OFFICER.  YOU'RE TO PARTICIPATE, ALSO, IN A

5   PROGRAM OF MENTAL HEALTH TREATMENT, AS DIRECTED BY THE

6   PROBATION OFFICER.  YOU'RE TO SUBMIT TO A SEARCH OF YOUR

7   PERSON, PROPERTY, RESIDENCE, AND VEHICLE AT A REASONABLE TIME

8   AND IN A REASONABLE MANNER, AS DIRECTED BY THE PROBATION

9   OFFICER.  ALSO, TELL THE PROBATION OFFICER ABOUT AUTOMOBILES

10  YOU OWN, OPERATE, OR HAVE AN INTEREST IN.

11          MR. FRANK, IS THERE A STIPULATED DEPORTATION

12  PROVISION AS PART OF --

13          MR. FRANK:  THERE IS.

14          THE COURT:  IS THAT PART OF THE NEGOTIATED DEAL?

15          MR. MASON:  YOUR HONOR, GIVE ME A MOMENT.  I'LL LOOK

16  AT THE PLEA AGREEMENT.

17          THE COURT:  I KNOW THAT SHE'S JUST A VISA HOLDER.  I

18  DON'T REMEMBER THAT TERM.

19          MR. MASON:  YOUR HONOR, THAT IS IN PARAGRAPH 10(I).

20          THE COURT:  I APOLOGIZE.  LET ME GO BACK,

21  MS. QUINTERO, AND START OVER ON THE SUPERVISED RELEASE TERM.

22          BECAUSE YOU'RE SUBJECT TO DEPORTATION AND YOU'LL BE

23  DEPORTED AFTER THIS, I'M GOING TO SET ONLY TWO CONDITIONS

24  RATHER THAN THE ONES I JUST RECITED.

25          THE TWO CONDITIONS ARE THESE:  ONE, DON'T VIOLATE

1    ANY UNITED STATES LAWS; AND, TWO, ONCE YOU'RE RETURNED TO

2    MEXICO, DON'T REENTER THE UNITED STATES FOR ANY REASON.

3            IF YOU COME BACK INTO THE UNITED STATES, YOU'RE

4    SUBJECT TO AN ADDITIONAL JAIL TERM ON THIS CASE AS WELL AS NEW

5    CHARGES BEING LODGED AGAINST YOU.

6            DO YOU UNDERSTAND THE CONDITIONS OF SUPERVISED

7    RELEASE?

8            THE DEFENDANT:  YES.

9            THE COURT:  I DECLINE TO IMPOSE A FINE.  SHE HAS NO

10   ABILITY TO PAY A FINE.  I DO IMPOSE A $100 PENALTY ASSESSMENT.

11   GIVEN A FOUR-YEAR SENTENCE, SHE CAN WORK IN PRISON INDUSTRIES

12   AND PAY THAT OFF BEFORE SHE'S RELEASED.

13           THE PROBATION OFFICER:  YOUR HONOR HAD MENTIONED A

14   MANDATORY MINIMUM OF FIVE YEARS.  THERE IS NO MANDATORY

15   MINIMUM BECAUSE SHE MET THE SAFETY VALVE.  SO THREE WOULD BE

16   ALLOWABLE.  FIVE IS CERTAINLY ALLOWABLE, ALSO.

17           THE COURT:  GIVEN THE STIPULATED DEPORTATION AND THE

18   EXCLUSION FROM ADMISSION, I'M GOING TO LEAVE IT AT FIVE.  I'D

19   LIMIT IT TO THOSE TWO TERMS:  VIOLATE NO UNITED STATES LAWS,

20   AND DON'T COME BACK.

21           MR. FRANK:  WOULD THE COURT CONSIDER INCLUDING IN

22   THE JUDGMENT AND COMMITMENT A RECOMMENDATION FOR THE 500-HOUR

23   DRUG PROGRAM?

24           THE COURT:  I WILL.  TO BE HONEST WITH YOU, I'VE

25   BEEN TOLD NUMEROUS TIMES SOMEONE WHO'S NOT A CITIZEN TYPICALLY

26

1   DOESN'T GET INTO THE PROGRAM.  IF SHE'S ELIGIBLE, I RECOMMEND

2   IT.

3         MR. FRANK:  I THINK THE BIGGEST DIFFERENCE IS SHE

4   MIGHT NOT GET THE BENEFIT OF LOWERING HER SENTENCE, BUT MAY

5   STILL BE ABLE TO PARTICIPATE.

6         THE OTHER THING I'D ASK THE COURT TO CONSIDER IS A

7   RECOMMENDATION FOR THE FACILITY IN DUBLIN.

8         THE COURT:  I'LL MAKE THAT RECOMMENDATION AS WELL.

9         MR. FRANK, DO YOU AGREE THAT THE PRONOUNCED SENTENCE

10  COMPORTS WITH WHAT WAS BARGAINED FOR BY MS. QUINTERO AND

11  TRIGGERS A WAIVER OF ANY RIGHT TO APPEAL OR COLLATERALLY

12  ATTACK THE COURT'S JUDGMENT IN THE FUTURE?

13        MR. FRANK:  YES, YOUR HONOR.

14        THE COURT:  MR. CROWLEY, LET'S TURN TO MR. RAMIREZ

15  NOW.

16        MR. CROWLEY:  THANK YOU, YOUR HONOR.

17        MR. MASON:   YOUR HONOR, IF I MAY, MY COLLEAGUE,

18  MR. CANOVER, WILL STAND IN FOR ME FOR THIS PORTION.

19        THE COURT:  YOU MAY WANT TO HANG AROUND FOR A

20  MINUTE.

21        DID YOU NEGOTIATE THE -- I MEAN, WHAT'S CONTESTED

22  AND WHAT I TOLD MR. CROWLEY I'LL HEAR MORE ABOUT IS THE MINOR

23  ROLE.  I'M NOT ONBOARD.  BUT IF I MISSED SOMETHING THAT YOU'RE

24  IN A UNIQUE SITUATION TO EDUCATE ME ABOUT AND SAY "JUDGE,

25  LOOK, IT'S NOT THE WAY YOU THINK.  THIS GUY DID HAVE A MINOR

1    ROLE NOTWITHSTANDING TEN CROSSINGS AND" --

2            MR. MASON:  YOUR HONOR, THIS WAS A FAST TRACK CASE.

3    MY INVOLVEMENT IN IT DID INCLUDE THE SAFETY VALVE.

4            THE COURT:  NOT THE MINOR ROLE?

5            MR. MASON:  BUT NOT ANY NEGOTIATION WITH RESPECT TO

6    THAT TERM OF THE PLEA AGREEMENT.

7            THE COURT:  DO YOU HAVE ANY ADDITIONAL INFORMATION

8    ON THAT THAT MIGHT HELP MEAN OR HELP MR. RAMIREZ?

9            MR. MASON:  I DO NOT, YOUR HONOR.  ALL I HAVE IS

10    WHAT IS IN THE PSR AND THE CASE LAW THAT WE ALL ARE FAMILIAR

11    WITH.

12            THE COURT:  UNDER THOSE CIRCUMSTANCE, YOU'RE

13    EXCUSED.

14            MR. CROWLEY:  I WOULD STATE ON THAT ONE ISSUE THAT

15    ALL THIS INFORMATION THAT THE COURT IS UTILIZING TO FIND

16    AGAINST HIM ON A MINOR ROLE CAME FROM MR. RAMIREZ AND CAME AT

17    THE EARLIEST OPPORTUNITY.  AND THE GOVERNMENT KNEW ALL OF THAT

18    INFORMATION WHEN THEY MADE THE OFFER.

19            THE COURT:  I'M SENSITIVE TO THAT, MR. CROWLEY.  BUT

20    THERE IS A CERTAIN UNFAIRNESS THAT SAYS "OKAY.  BE

21    FORTHCOMING" AND THEN HAVE IT SHOVED DOWN YOUR THROAT.  I'M

22    SENSITIVE TO THAT.

23            ON THE OTHER HAND, I DON'T THINK IT'S GOOD POLICY TO

24    SAY, "BE FORTHCOMING BECAUSE IT WON'T AFFECT OUR JUDGMENT AT

25    ALL.  WE'LL JUST SAY, 'OH, WOW.  THIS IS MUCH BIGGER THAN WHAT

28

1    WE ORIGINALLY THOUGHT OR WHAT WE THOUGHT WE COULD PROVE.'"

2    I'M NOT ENTIRELY CONVINCED THAT SOME OF THIS WOULDN'T HAVE

3    BEEN FLESHED OUT HAD THE CASE BEEN INVESTIGATED IN PREPARATION

4    FOR TRIAL.

5         MR. CROWLEY:  WELL, PREPARATION FOR TRIAL.  I

6    THOUGHT THE COURT WAS GOING TO AN ISSUE THAT -- BEFORE YOUR

7    HONOR WAS ON THE BENCH, SOMETHING THAT ALWAYS STUCK WITH ME

8    THAT YOU SAID ONCE IN A CASE THAT WE HAD TOGETHER WAS "THERE

9    WAS REALLY GOOD POLICE WORK IN THIS CASE."  AND THE REASON YOU

10   SAID IT IN THE WAY YOU SAID IT WAS BECAUSE WE DIDN'T SEE IT

11   THAT MUCH, QUITE FRANKLY, UNFORTUNATELY.  EFFORTS WERE MADE

12   HERE THAT WERE, GOSH, IN MY OPINION, LACKING.

13        AND SO I DON'T MEAN TO RAIN ON THE PARADE OF LAW

14   ENFORCEMENT, BUT WE'VE JUST BEEN AROUND FOR A LONG TIME, BOTH

15   OF US.  IN THE PAST, I WOULD HAVE SEEN ISSUES WHERE HE WOULD

16   HAVE BEEN SITTING UP HERE BASICALLY SAYING THAT YOU WOULD BE

17   GETTING A LETTER UNDER SEAL FROM THE GOVERNMENT ABOUT HIS

18   EFFORTS, AND YET NOW IT TURNS AROUND.  IT'S HARD TO EXPLAIN TO

19   HIM THAT ALL THE INFORMATION THAT HE PROVIDES ENDS UP BEING

20   USED AGAINST HIM.

21        IT'S HARD TO SQUARE THAT, YES, I UNDERSTAND WHAT THE

22   COURT IS SAYING.  YOU CAN'T JUST IGNORE IT.  BUT THEN, ON THE

23   OTHER HAND, WE'RE SAYING THAT --

24        THE COURT:  ACTUALLY, I'M WILLING TO -- AND I'LL

25   COMMIT TO YOU AND MR. RAMIREZ THAT I WILL IN HIS CASE --

1    CONSIDER IT IN TWO CONTEXTS; ONE THAT DOESN'T HELP HIM, AND

2    ONE THAT DOES.

3         ONE CONTEXT IS IT FULLY INFORMS ME ABOUT LEGAL

4    ISSUES SUCH AS ROLE AND ABOUT THE SCOPE OF HIS INVOLVEMENT.

5    ON THE OTHER HAND, IT CAME FROM HIM.  AND I THINK THAT'S A

6    GOOD THING.  YOU'RE COMING IN.  YOU'RE ASKING FOR REDUCTIONS.

7    YOU'VE BEEN ENTIRELY FORTHCOMING.  THAT'S A POSITIVE THING.

8         I DON'T KNOW WHERE THAT FITS UNDER THE GUIDELINES,

9    BUT IT CERTAINLY FITS UNDER THE 3553 FACTORS.

10        MR. CROWLEY:  I APPRECIATE THAT.

11        THE COURT:  SO I WILL -- I GIVE YOU MY ASSURANCE TO

12   TAKE THAT INTO ACCOUNT AND DO THAT BIFURCATED THINKING.

13        MR. CROWLEY:  ONE OTHER ISSUE WHICH WE'VE HAD LONG

14   DISCUSSIONS ABOUT.  AND I CERTAINLY UNDERSTAND NOT ONLY THIS

15   COURT'S VIEW ON IT, BUT IT'S BEEN EXPRESSED IN THE PAST.  BUT

16   ALSO OTHER COURTS, QUITE CORRECTLY, PROBABLY, IN MANY WAYS.

17   THAT IS THE IDEA THAT, OF COURSE, HE WAS TOLD THAT IT WAS

18   MARIJUANA AND NOT METHAMPHETAMINE.

19        THIS ONE WAS A HALF-STEP FURTHER IN WHICH HE WAS

20   ACTUALLY SHOWN THE CONTRABAND IN ONE CASE.  AND SO FOR SOME

21   REASON, THAT GAVE HIM SOME ASSURANCE THERE.  AND SO THAT'S

22   SOME SORT OF ADDITIONAL ISSUE.  AND, OF COURSE, I TAKE THE

23   COURT'S WORDS ABOUT METHAMPHETAMINE.  QUITE FRANKLY, THAT'S

24   PROBABLY THE AREA THAT YOU AND I AGREE WITH THE MOST.  WE

25   DON'T AGREE ON ALL THAT MANY THINGS.  BUT THAT ONE WE

1    ABSOLUTELY DO AGREE ON.  AND WE'VE SEEN IT FROM BOTH SIDES AND

2    KNOW THAT IT'S -- QUITE FRANKLY, I SAY IT WHENEVER ANYBODY

3    WILL LISTEN.  METHAMPHETAMINE IS THE WORST THING OUT THERE.

4        THE COURT:  IT'S AWFUL.  MR. RAMIREZ, YOU KNOW THAT.

5    THERE'S PEOPLE OVER THERE THAT ARE ADDICTED TO IT.  YOU CAN

6    SEE IT IN THEIR FACES.  THEY'VE GOT THIS CHISELED LOOK, AND

7    THEY'VE GOT ALL KINDS OF BLEMISHES, AND THEIR TEETH ARE

8    FALLING OUT.  IT'S JUST AWFUL.

9        GO AHEAD.

10       MR. CROWLEY:  THE ONLY OTHER -- WELL, I'D JUST ADD

11   BRIEFLY ON THE MINOR ROLE, AT ONE TIME WE HAD A DISTINCTION

12   ABOUT WHAT WAS ABERRANT BEHAVIOR.  THAT HAD TO DO WITH THE

13   SINGLE INSTANCE OF COMING CROSSING.  THAT SEEMED TO HAVE

14   MORPHED INTO MINOR ROLE.  AND WITH THAT, I WOULD SUBMIT ON

15   THAT PARTICULAR ISSUE.

16       WHAT I THINK IS, IN MY OPINION, MORE IMPORTANT ABOUT

17   MR. RAMIREZ AS I'VE GOTTEN TO KNOW HIM OVER THESE MONTHS THAT

18   WE'VE BEEN -- IT'S BEEN DIFFICULT NEGOTIATIONS AND A DIFFICULT

19   CASE FOR HIM.  FROM THE MINUTE HE WAS ARRESTED, HE HAS

20   UNDERSTOOD THE PROBLEM THAT HE WAS IN.  HE HAS ALWAYS BEEN

21   VERY -- QUITE FRANKLY, WHEN THESE ALLEGATIONS OF THIS DOMESTIC

22   ABUSE CAME OUT, IT WAS A SHOCKER BECAUSE OF HOW, QUITE

23   FRANKLY, LOVINGLY AND HOW WILLING TO FALL ON HIS SWORD HE WAS

24   FOR HER ALL ALONG.

25       THAT SAID, HE'S REALLY TAKEN SOME EFFORTS.  I PUT IN

1    THE SENTENCING MEMORANDUM THE KINDS OF THINGS -- I'VE NEVER

2    SEEN AN EVALUATION FROM FOOD SERVICES.  MAYBE THE COURT HAS.

3    BUT HE JUST HIT EVERY SINGLE ONE.  IT SHOWS AN ATTITUDE.  IT

4    SHOWS A WAY THAT HE'S TURNED IT AROUND AND CHANGED IT.

5         HE DID HAVE A DRUG PROBLEM, TOO, WHICH OBVIOUSLY

6    CONTRIBUTED TO THIS SITUATION.  SO HE WANTS TO ADDRESS THAT.

7    HE HAS ADDRESSED IT.  BUT HE KNOWS THAT WHEN HE GETS BACK OUT

8    THERE, THERE'S GOING TO BE ADDITIONAL PROBLEMS THAT HE'S GOING

9    TO HAVE TO DEAL WITH.

10        SO WHAT I SEE HERE -- AND I DON'T SAY -- I TRY NOT

11   TO INJECT MYSELF PERSONALLY UNLESS IT'S REALLY APPROPRIATE.  I

12   FEEL STRONGLY ABOUT IT.  I REALLY HAVE SEEN A DIFFERENCE

13   FROM -- ALTHOUGH I HAVE TO SAY FROM DAY ONE OF ME MEETING HIM,

14   HE WAS LIKE THAT AND READY TO DO WHATEVER IT TOOK TO TURN IT

15   AROUND INCLUDING WHATEVER SENTENCE THE COURT DISHED OUT.

16        I WENT BACK AND LOOKED AT THAT TRANSCRIPT WHEN I

17   WASN'T EVEN HERE.  AND HE SPOKE ABOUT "I UNDERSTAND THAT THE

18   COURT NEEDS TO GIVE ME A SENTENCE, AND I'M READY TO ACCEPT

19   IT."  THAT'S THE WAY HE'S ALWAYS BEEN WITH ME, A DELIGHTFUL

20   CLIENT IN THAT REGARD.  THEY'RE NOT ALL LIKE THAT.

21        SO I THINK THAT SHOULD BE TAKEN INTO ACCOUNT.  THE

22   OFFENSE RECOGNIZED BY ALL PARTIES AS BEING TERRIBLE, FALLING

23   FOR THE LURE OF IT, THE EXCITEMENT OF IT IN TAKING THESE

24   TRIPS, BUT THEN OWNING UP TO THEM RIGHT AWAY AND THEN TURNING

25   IT AROUND.

32

1          I WOULD SUBMIT.

2          I THINK MR. RAMIREZ DOES WANT TO SPEAK TO THE COURT.

3          THE COURT:  MR. RAMIREZ, I'M HAPPY TO HEAR FROM YOU.

4          THE DEFENDANT:  FIRST OF ALL, I'D LIKE TO APOLOGIZE

5   TO MY FIANCEE VERONICA QUINTERO FOR BRINGING HER INTO THIS

6   PROBLEM.  THE SECOND ONE, MY FAMILY.  I'M READY FOR MY

7   SENTENCE, YOUR HONOR.  YOU CAN DO THE BEST YOU CAN.  I'M READY

8   TO PAY FOR MY PROBLEM THAT I DID.

9          THE COURT:  ON BEHALF OF THE UNITED STATES.

10         MR. MASON:  THE UNITED STATES WILL SUBMIT, YOUR

11  HONOR.

12         THE COURT:  THE GUIDELINES I'VE ACKNOWLEDGED ARE

13  ADVISORY.  THAT SAID, I FIND MYSELF IN AGREEMENT WITH THE

14  GUIDELINE CALCULATIONS SET FORTH IN THE PROBATION REPORT WITH

15  SOME QUALIFICATION.  ACTUALLY, WITH THESE QUALIFICATIONS:

16  FIRST, I FIND THAT THE BASE LEVEL HERE IS 38.  THIS INVOLVED

17  ABOUT 11 POUNDS OF PURE METHAMPHETAMINE, 5.5 KILOS OF PURE

18  METHAMPHETAMINE.  THAT PRODUCES A BASE LEVEL OF 38.

19         THE METHAMPHETAMINE IN THIS CASE, THERE'S NO

20  DISPUTE, WAS IMPORTED INTO THE UNITED STATES UNDER 2D1.1.

21  THAT ADDS TWO AND TAKES THIS TO A 40.

22         THE ISSUE OF MINOR ROLE I'VE ADDRESSED.  I DO NOT

23  FIND IN THIS CASE BY A PREPONDERANCE OF EVIDENCE THAT

24  MR. RAMIREZ HAD A ROLE THAT WAS SUBSTANTIALLY LESS CULPABLE TO

25  THE AVERAGE PARTICIPANT.  AND I'VE, BY BULLET POINT, ALLUDED

1    TO THE REASONS WHY.  THEY'RE MORE PARTICULARLY SET FORTH AT

2    PAGE 2.

3            THE INVOLVEMENT IN THIS ACTIVITY BEGAN SOME THREE

4    MONTHS BEFORE HIS ARREST.  IT'S INDICATED HERE, AS MR. CROWLEY

5    ALLUDES TO, THAT HE BELIEVED HE WAS TRANSPORTING MARIJUANA --

6    THAT'S WHAT HE WAS TOLD -- AT $2,000 PER TRIP.  BUT THERE'S NO

7    INDICATION OF ANY HESITATION AT THE TIME.  AND AS MR. CROWLEY

8    POINTS OUT, I THINK THERE WAS SOME THRILL TO THIS.  THERE WAS

9    THE PROSPECT OF BIG MONEY.

10           WHAT'S ABSOLUTELY CLEAR TO ME IS THAT MR. RAMIREZ,

11   AT THE POINT IN TIME HE CONSIDERED THIS AND HE WAS CONTACTED,

12   WAS A WILLING IMPORTER OF NARCOTICS INTO THE UNITED STATES.

13   THAT BEING THE CASE, HE'S IN PRIME POSITION AND MUST ASSUME

14   RESPONSIBILITY THAT THESE PEOPLE THAT YOU DEAL WITH ARE GOING

15   TO LIE TO YOU.  THEY'RE GOING TO LIE TO YOU ABOUT THE KIND OF

16   DRUG THAT YOU'RE BRINGING IN AND THE AMOUNT OF THE DRUG.

17   THEY'RE NOT NICE PEOPLE.

18           AND IN THE FIRST INSTANCE, YOU HAVE THE

19   RESPONSIBILITY TO VERIFY WHAT THEY'RE TELLING YOU IS TRUE.  "I

20   WANT TO SEE THIS.  BEFORE YOU COVER THAT STUFF UP OR AFTER YOU

21   PACK IT IN, I WANT TO SEE IT AND MAKE SURE THAT IT'S WHAT YOU

22   TELL ME I'M BRINGING IN, MARIJUANA."

23           THAT MAY SEEM CLUMSY.  IT MAY SEEM NAIVE TO DO THAT.

24   BUT YOU'RE THE GUY THAT CAN DOUBLE-CHECK ON THOSE THINGS,

25   NOBODY ELSE.  I CAN'T LAY IT ON LAW ENFORCEMENT OR THE

1    PROSECUTORS.  WHEN YOU AGREED TO BRING DRUGS ACROSS, YOU TOOK

2    THE RISK AND ASSUMED THE RISK THAT THEY WERE GOING TO PULL A

3    SWITCHAROO ON YOU.  AND THEY DID, APPARENTLY, IN THIS CASE.

4            DURING THE TIME PRECEDING HIS ARREST IN THIS CASE,

5    HE REGISTERED A VEHICLE IN HIS NAME.  HE TESTED BY DRIVING

6    THROUGH THE PORT OF ENTRY AT VARIOUS TIMES.  HE ESTIMATED THAT

7    HE WENT THROUGH TEN TIMES ON TEST TIMES.  ALL THIS IS

8    INDICATIVE OF STEEPED INVOLVEMENT IN A DRUG ENTERPRISE AND

9    PREMEDITATION.  HE MADE SEVERAL TRIPS ACROSS THE BORDER

10   ACTUALLY BRINGING DRUGS ON VARIOUS DATES, WENT TO LOCATIONS IN

11   SAN JOSE, ONE TRIP TO CHICAGO WHERE HE WAS ACCOMPANIED BY

12   MS. QUINTERO, AS I UNDERSTAND IT.  EACH TIME HE RECEIVED THE

13   $2,000.  WHAT'S NOT CLEAR TO ME IS HOW MANY TOTAL TRIPS THERE

14   WERE, BUT THERE WAS SUBSTANTIAL INVOLVEMENT IN IMPORTING

15   NARCOTICS.

16           AS I SAID, I'LL CONSIDER THIS ONLY WITH RESPECT TO

17   ROLE IN A WAY THAT DOESN'T HELP MR. RAMIREZ.  BUT I CAN'T

18   IGNORE THE FACT, ALSO, THAT THE CO-DEFENDANT SAYS, "BUT FOR

19   HIM PRESSURING ME, I WOULDN'T HAVE BEEN A PASSENGER IN THE

20   CAR.  I WOULDN'T HAVE BEEN INVOLVED IN THIS."

21           I KNOW YOU'VE ALLUDED TO IT, MR. RAMIREZ.  YOU FEEL

22   BADLY ABOUT HER PREDICAMENT.  SHE'S DOING FOUR YEARS NOW.  IF

23   THAT STUFF IS TRUE, THAT YOU PRESSURED HER, THAT YOU SORT OF

24   WILLED HER INTO THIS, SHE'S DOING FOUR YEARS ON ACCOUNT OF

25   YOU, TOO.

1          SO IN THE END, I SEE THIS FOR WHAT I THINK IT WAS.

2    I THINK IT WAS A PLEA BARGAINING TOOL TO RECOMMEND MINOR ROLE.

3    I'M NOT AGAINST GETTING TO A CERTAIN NUMBER, MR. CROWLEY, THAT

4    YOU AND THE GOVERNMENT AGREE TO IF WE CAN GET THERE

5    LEGITIMATELY.  BUT THE EFFECT OF THIS IS TO ASK ME TO MAKE

6    ILLEGITIMATE FINDINGS, TO SAY MINOR ROLE WHEN I DON'T BELIEVE

7    THAT.  IN GOOD CONSCIENCE, I DON'T THINK A REASONABLE PERSON

8    LOOKING AT ALL THE CIRCUMSTANCES WOULD.

9          HAVING SAID THAT, IF YOU WANT TO GIVE HIM TWO EXTRA

10   POINTS FOR COMING CLEAN AT AN EARLY STAGE -- YOU HAVE THE

11   AUTHORITY TO GO UP TO FOUR POINTS -- I'LL GRANT THAT.  THAT'S

12   LEGIT.  YOU CAN TELL ME "JUDGE, WE'VE GOT A LOT OF THESE

13   CASES.  AS SERIOUS AS THEY ARE, IF THE GUY COPS OUT ON THE

14   FIRST INSTANCE, WE'LL GIVE HIM FOUR POINTS OFF RATHER THAN

15   TWO."

16         IT'S NOT ABOUT MY DISAGREEMENT WITH A CERTAIN

17   NUMBER.  IF YOU WANT TO GET TO THE NUMBER IN A LEGITIMATE WAY,

18   I'LL ACCOMMODATE YOU.  BUT I'M NOT GOING TO BE A PART OF AN

19   ILLEGITIMATE FINDING HERE.  SO I'M HAPPY TO MAKE THAT

20   ADJUSTMENT AND GIVE HIM FOUR POINTS INSTEAD OF TWO FOR FAST

21   TRACK IF YOU MAKE THAT RECOMMENDATION.

22         MR. MASON:  I'M AUTHORIZED ONLY TO MAKE A

23   RECOMMENDATION OF TWO POINTS, YOUR HONOR.

24         THE COURT:  MAYBE IN THE FUTURE, MR. CROWLEY, THAT

25   OUGHT TO BE THE POINT OF NEGOTIATION.  AS I SAID --

36

1          MR. CROWLEY:  YOU MEAN DURING THE ONE WEEK WE HAVE
2     TO MAKE A DETERMINATION?
3          THE COURT:  I WOULD JUST SAY, "LOOK, IT'S IN FRONT
4     OF HIM.  HE LOOKS AT THESE CASES CAREFULLY IF IT GOES PAST TWO
5     POINTS.  BUT THERE'S ANOTHER WAY WE CAN GET POINTS OFF.  GIVE
6     ME FOUR ON THIS THING."  AND MAYBE THEY'LL HAVE A DIFFERENT
7     WAY OF LOOKING AT IT.
8          MR. RAMIREZ, THE COMMENTS I MADE ABOUT MINOR ROLE
9     ARE NOT A REFLECTION ON YOUR LAWYER'S EFFORTS AT ALL.  HE DID
10    A FABULOUS JOB IN GETTING THIS NEGOTIATION.  I JUST DON'T
11    AGREE WITH IT.  AS YOU WERE TOLD AT THE TIME OF THE PLEA, AT
12    THE END I HAVE TO PUT INDEPENDENT JUDGMENT TO THIS, AND I
13    HAVE.  I'M NOT MAD.  MR. CROWLEY HAS DONE EXACTLY WHAT HE WAS
14    SUPPOSED TO DO.  HE'S TRIED TO REDUCE YOUR EXPOSURE DOWN TO
15    THE BARE MINIMUM, AND HE DID A GOOD JOB AT THAT.
16         SO THE COURT, AS I SAID, FINDS THAT NO MINOR ROLE IS
17    APPROPRIATE HERE.
18         I CAN'T RECALL.
19         WAS THIS FELLOW SAFETY VALVE ELIGIBLE?
20         MR. CROWLEY:  YES, YOUR HONOR.
21         THE COURT:  AND THERE IS A RECOMMENDATION FOR SAFETY
22    VALVE; RIGHT?
23         MR. MASON:  YES, YOUR HONOR.  HE HAS MET ALL FIVE
24    PRONGS.
25         THE COURT:  SO FROM 40, WE GO DOWN TO 38.  I DO

1    GRANT THE SAFETY VALVE ELIGIBILITY.  I TAKE THREE ADDITIONAL

2    POINTS OFF FOR ACCEPTANCE, WHICH TAKES US TO 35.  I TAKE TWO

3    ADDITIONAL POINTS OFF FOR FAST TRACK.

4            I DON'T HAVE ANY AUTHORITY, MR. CROWLEY, I THINK TO

5    EXCEED THE TWO POINTS ABSENT A GOVERNMENT MOTION.  THAT'S THE

6    STATE OF THE CASE LAW IN THESE ADVISORY GUIDELINES.

7            DO YOU AGREE?

8            MR. CROWLEY:  I AGREE IT'S THE STATE OF THE CASE

9    LAW, YES.

10           THE COURT:  IN THE END, I FIND THAT HE'S A 33 UNDER

11   THE ADVISORY GUIDELINES.

12           HE'S IN CRIMINAL HISTORY CATEGORY 1.  THE RANGE IS

13   135 TO 168.

14           LET ME TURN TO THE 3553 FACTORS NOW.

15           I'M NOT GOING TO BEAT YOU UP ANY MORE ABOUT HOW BAD

16   THIS WAS.  IT'S A BAD SUBSTANCE TO BE INVOLVED IN, AND YOU

17   WERE INVOLVED IN IT FOR A LONG TIME.  I HAVE TO ASSUME, AND I

18   THINK YOU DO NOW, THAT THE OTHER TRIPS YOU MADE WERE

19   METHAMPHETAMINE AND NOT MARIJUANA.  AND I DON'T KNOW IF YOU

20   FOUND OUT ABOUT THAT SOMETIME BEFORE BEING ARRESTED ON THIS

21   CASE.  BUT IF YOU DID, THAT SHOULD HAVE BEEN REASON TO STEP

22   AWAY FROM THIS THING NOTWITHSTANDING THE $2,000 PER TRIP.

23           IN TERMS OF HISTORY AND CHARACTERISTICS, I DO FIND

24   EQUITIES HERE, PARTICULARLY IN HIS POST-ARREST CONDUCT AND

25   PERFORMANCE.  MR. CROWLEY IS RIGHT THAT HE HAS REALLY STEPPED

38

1    UP TO THE PLATE.

2            I'VE GOT TO TELL YOU MAN TO MAN, MR. RAMIREZ, THAT I

3    APPRECIATE YOUR APPROACH TO THIS.  I REMEMBER WHEN YOU PLED

4    GUILTY.  YOU REALLY REITERATED PART OF THAT ATTITUDE TODAY

5    WHEN YOU SAID, "YOU KNOW WHAT, I DID THIS THING.  I MADE A

6    MISTAKE.  I'M NOT GOING TO GIVE ANY EXCUSES.  I'M PREPARED TO

7    TAKE MY PUNISHMENT."

8            YOU ACKNOWLEDGED, I THINK, THE JAM THAT YOU GOT YOUR

9    FIANCEE INTO.  THOSE THINGS ALL RESONATE WITH ME.

10           I ALSO TAKE INTO CONSIDERATION IN A POSITIVE WAY

11   THAT MUCH OF THE INFORMATION THAT IS AGGRAVATED ABOUT THIS

12   CASE IS KNOWN ONLY BECAUSE MR. RAMIREZ TOLD US ABOUT IT.  I

13   THINK THAT'S WHAT YOU'RE SUPPOSED TO DO WHEN YOU PLEAD GUILTY.

14           THE DEFENDANT:  TO BE HONEST.

15           THE COURT:  WHEN YOU PLEAD GUILTY, YOU SAY, "OKAY.

16   I'M CAUGHT.  HERE'S WHAT'S INVOLVED.  THIS IS IT.  JUDGE, DO

17   WITH IT WHAT YOU CAN.  GIVE ME SOME CREDITS FOR BEING HONEST."

18   I'LL GIVE YOU THAT CREDIT TODAY.

19           I ROUTINELY GIVE TWO POINTS OFF FOR ROLE.  IT WOULD

20   BE UNFAIR TO SAY BECAUSE I DISAGREE WITH THE ROLE ADJUSTMENT

21   IN THIS CASE THAT I'M GOING TO GIVE HIM NO CREDIT.  SO I WOULD

22   ESSENTIALLY FIND, WITHOUT DOING IT UNDER THE GUIDELINES WHEN I

23   LOOK AT THE KINDS OF SENTENCES IMPOSED AS TO SIMILARLY

24   SITUATED DEFENDANTS, THAT THAT WOULD RESULT IN A FURTHER

25   TWO-POINT REDUCTION UNDER THE GUIDELINE LEVEL, WHICH WOULD

39

1    DROP THIS TO A 31.  AND THE RANGE WOULD BE 108 TO 135 IF THAT

2    WERE THE CASE.

3         AGAIN, I EMPHASIZE, MR. CROWLEY, I'M NOT DOING THAT

4    UNDER THE GUIDELINES.  BUT THERE IS A FACTOR THAT SAYS, "LOOK

5    AT THE KINDS OF SENTENCES IMPOSED IN OTHER CASES."  AND AS YOU

6    KNOW AND I'VE ACKNOWLEDGED HERE, THE ROLE ADJUSTMENT IS A

7    PLEA-BARGAINING TOOL.  UP TO TWO POINTS I GO ALONG WITH.  IT

8    WOULD BE UNFAIR NOT TO GIVE HIM THE BENEFIT OF THAT.  SO I

9    WILL TAKE THAT INTO ACCOUNT AS WELL.

10        IN THE END, AFTER CONSIDERING AGAIN THE NEED FOR

11   DETERRENCE IN THIS CASE -- ALTHOUGH I HOPE, MR. RAMIREZ,

12   WHAT'S IMPLICIT IN EVERYTHING YOU'VE SAID TO ME IS THAT YOU'RE

13   NOT GOING TO EVER DO ANYTHING LIKE THIS AGAIN --

14        THE DEFENDANT:  NO, SIR.

15        THE COURT:  -- I STILL THINK THERE'S A PURPOSE IN

16   GENERAL DETERRENCE SERVED.

17        THE COURT FINDS THAT THE MOST APPROPRIATE SENTENCE

18   HERE IS 87 MONTHS.  I DO IMPOSE IN MR. RAMIREZ'S CASE AN

19   87-MONTH SENTENCE.

20        THAT'S TO BE FOLLOWED BY A PERIOD OF SUPERVISED

21   RELEASE, MR. RAMIREZ.  YOU, AS A U.S. CITIZEN, ARE ON

22   SUPERVISED RELEASE FOR FIVE YEARS.

23        THERE IS A MANDATORY MINIMUM FIVE YEARS BECAUSE OF

24   THE --

25        THE PROBATION OFFICER:  IT WOULD BE THREE OR FIVE.

40

1           THE COURT:  I FIND FIVE YEARS IS APPROPRIATE.  I

2     WOULD CONSIDER AN EARLY TERMINATION OF SUPERVISED RELEASE IF

3     THERE'S GOOD PERFORMANCE FOR THE FIRST THREE YEARS.  BUT FOR

4     THE TIME BEING, I'M GOING TO SET IT AT FIVE.

5           HE'S NOT TO POSSESS FIREARMS, EXPLOSIVE DEVICES, OR

6     DANGEROUS WEAPONS.

7           HE'S TO PROVIDE COMPLETE DISCLOSURE OF PERSONAL AND

8     FINANCIAL BUSINESS RECORDS TO THE PROBATION OFFICER.

9           HE'S TO PARTICIPATE IN A PROGRAM OF DRUG OR ALCOHOL

10    ABUSE TREATMENT, INCLUDING DRUG TESTING AS DIRECTED BY THE

11    PROBATION OFFICER.

12          HE'S TO SUBMIT TO A SEARCH OF HIS PERSON, PROPERTY,

13    RESIDENCE, VEHICLE AT REASONABLE TIMES AND IN A REASONABLE

14    MANNER WHEN DIRECTED BY A PROBATION OFFICER.

15          THE LONG-TERM INVOLVEMENT -- RELATIVELY LONG-TERM

16    INVOLVEMENT IN DRUG-SMUGGLING ACTIVITY AND THE STEALTH THAT

17    WAS INVOLVED AND THE OVERALL EFFORT LEAD ME TO BELIEVE

18    ADDITIONAL RESTRICTIONS ON 4TH AMENDMENT RIGHTS ARE

19    APPROPRIATE DURING THE PERIOD OF SUPERVISED RELEASE.  SO I

20    EXPAND THE SEARCH WAIVER -- SEARCH WARRANT WAIVER CONDITION TO

21    ANY REQUEST BY A COP, STATE, FEDERAL, OR LOCAL, TO SEARCH YOU,

22    YOUR HOUSE, YOUR CAR.  YOU'VE GOT TO LET THEM DO IT.  IF IT

23    COMES BACK TO ME THAT YOU SAID "OH, NO.  GO GET A WARRANT,"

24    YOU'LL BE IN VIOLATION.  SO ON SUSPICION BY A POLICE OFFICER,

25    YOU'RE TO SUBMIT TO A SEARCH.

41

1          TELL THE PROBATION OFFICER ALL VEHICLES YOU OWN,

2     OPERATE, OR HAVE AN INTEREST IN.

3          NOW, CONCERNING THE REPUBLIC OF MEXICO, IT APPEARS

4     MS. QUINTERO IS HEADED THERE.  I'M GOING TO ORDER THAT YOU NOT

5     GO INTO MEXICO WITHOUT PERMISSION OF THE PROBATION OFFICER.

6     I'M GOING TO ASSUME IT WILL ONLY BE A DAY TRIP.  AND YOU'LL

7     HAVE TO CALL BEFORE YOU LEAVE AND CALL BEFORE YOU COME BACK.

8          MR. RAMIREZ, IF YOU DO WELL AND THERE'S NO FOUL-UPS

9     ON SUPERVISED RELEASE, I'LL CUT THE TERM DOWN TO THREE YEARS

10    AFTER YOU'VE PERFORMED FOR THREE YEARS WITH NO FOUL-UPS.

11         I DECLINE TO IMPOSE A FINE.  I DO IMPOSE A $100

12    PENALTY ASSESSMENT.

13         THE GOVERNMENT HAD RECOMMENDED A SENTENCE NO LONGER

14    THAN 71 MONTHS.  I'VE EXCEEDED THAT.  HE HAS A RIGHT TO APPEAL

15    THE JUDGMENT AND SENTENCE PRONOUNCED BY THIS COURT.

16         YOUR NOTICE OF APPEAL HAS TO BE FILED WITHIN TEN

17    DAYS.  IT HAS TO BE FILED IN THIS COURT.  MR. CROWLEY WILL

18    HELP YOU DO THAT IF YOU DETERMINE THERE'S GROUNDS FOR APPEAL

19    THAT YOU WANT TO PURSUE OR THE CLERK OF THE COURT WILL HELP

20    YOU.

21         THERE IS ORDINARILY A PAYMENT TO APPEAL.  BUT

22    BECAUSE YOU HAVE COURT-ASSISTED COUNSEL AND CAN'T AFFORD IT,

23    THAT FEE WILL LIKELY BE WAIVED.  YOU CAN FILE A FREE APPEAL.

24         DO YOU UNDERSTAND YOUR RIGHT TO APPEAL?

25         THE DEFENDANT:  YES, YOUR HONOR.

1          THE COURT:  OKAY, MR. RAMIREZ.

2          MR. CROWLEY:  YOUR HONOR, THERE WAS -- I WOULD

3    REQUEST A RECOMMENDATION FOR THE DRUG PROGRAM.  THAT IS THE

4    ONE PART OF THE PROBATION REPORT I AGREED WITH.

5          THE COURT:  I'LL MAKE THAT RECOMMENDATION.

6          IF YOU TAKE AND COMPLETE THAT 500-HOUR DRUG PROGRAM,

7    IT SHAVES A YEAR OFF THE SENTENCE IN YOUR CASE.  YOU SHOULD

8    AVAIL YOURSELF OF THAT.  IT WILL GIVE YOU SOME MORE

9    INFORMATION AND A COMMITMENT NOT TO GET INVOLVED IN THIS TYPE

10   OF THING AGAIN, I HOPE, AND THE BENEFIT OF HAVING AN

11   ADDITIONAL YEAR SHAVED OFF THE SENTENCE.

12          ANYTHING ELSE?

13          MR. CROWLEY:  NO, YOUR HONOR.  THANK YOU.

14          THE COURT:  GOOD LUCK, MR. RAMIREZ.  NO MORE

15   PROBLEMS, I HOPE.

16                      --OOO--

17          I HEREBY CERTIFY THAT THE TESTIMONY

18          ADDUCED IN THE FOREGOING MATTER IS

19          A TRUE RECORD OF SAID PROCEEDINGS.

20

21          S/EVA OEMICK                    5-15-08

22          EVA OEMICK                      DATE
            OFFICIAL COURT REPORTER
23

24

25